## No. 20929.

JOE SEGURA *v*. THE PEOPLE OF THE STATE OF COLORADO.

(412 P.2d 227)

Decided March 14, 1966. Rehearing denied April 4, 1966.

SEAVY and SEAVY, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, JOHN P. MOORE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

JOE SEGURA was found guilty of murder in the first degree by jury verdict and the penalty was fixed at death. Judgment and sentence followed, and he seeks reversal by writ of error.

At the trial, the People established that, in the early evening hours of September 16, 1962, Joe Segura called his wife, Lorraine, to the garage of their home and asked her whether certain tomatoes stored therein were ready for canning. He then told Lorraine that "something was

going to happen," and thereupon, without further comment, commenced beating her about the head, arms, and hands with a baseball bat. This unprovoked and brutal attack lasted for from ten to twenty minutes, and its fury is amply demonstrated by the fact that the defendant broke one bat during the process and then used another bat to continue the onslaught.

A neighbor, who was alerted by the noise and cries of Lorraine, went to the Segura home and there notified defendant's son, Chris, of what was occurring in the garage. Chris, who was twenty-eight years of age on the date in question, went to the garage and was there clubbed to death by the defendant. Lorraine testified that Joe Segura, upon seeing Chris approaching, hid behind a small door leading into the garage, and that, when Chris entered, he was struck in the back of the head with the bat then wielded by defendant.

Medical testimony established that Chris had a number of bruises on his body and head, and that the cause of death was a brain injury to the posterior left head. While the defendant's attention was directed to Chris, Lorraine left the garage and went to a neighbor's home. This neighbor had already called the police and advised also that first-aid was needed.

When the police arrived at the scene, Joe Segura was observed bleeding about the throat and had blood on the upper part of his "T" shirt and about his arms. To Officer Lutes he stated: "Family trouble, come to the garage." He informed the police that he had cut his throat and repeated: "Family trouble. A lot can happen when you are gone eight years."

Joe Segura did not testify, nor did he produce any witnesses in his behalf.

The first argument presented for reversal is that the trial court erred in permitting separation of the jury during recesses, contrary to Rule 24(d), Colo. R. Crim. P. The rule reads as follows:

"(d) *Custody of Jury*. Unless otherwise ordered by

the court, jurors shall be kept in the bailiff's custody during trial recesses. *In capital cases, however, jurors shall remain in the bailiff's custody during all recesses from the time they enter into and remain in the jury box as prospective jurors until excused by the court."* (Emphasis supplied.)

By the rule this court has implemented that which has been the traditional practice of trial courts in this state. The practice has been expressly approved by this court. *Eaddy v. People,* 115 Colo. 488, 174 P.2d 717; *Elkin v. People,* 5 Colo. 508; cf. *Becksted v. People,* 133 Colo. 72, 292 P.2d 189; *Stephens v. People,* 107 Colo. 350, 111 P.2d 1057; *Jones v. People,* 6 Colo. 452, 45 Am. Rep. 526.

The record discloses that the first time counsel for defendant objected to separation was on his motion for a new trial, and the record further shows that both defense counsel and the district attorney affirmatively agreed that separation should be permitted. This agreement was made after the jury of twelve regular members and one alternate was accepted by the defense and the prosecution, but prior to the time when the jury was sworn. It does not appear from the record that the jury was allowed to separate prior to the agreement of counsel. The usual admonitory instructions, applicable to juries not kept together in the course of a trial, were given by the trial court, and always without remonstrance from the attorneys and the parties.

Defendant contends that the provisions of Rule 24(d), Colo. R. Crim. P., are not susceptible to waiver and that, in any event, the defendant's *personal* assent — and not his counsel's alone — is mandatory. Harmony in the decisions is lacking. We, however, are of the view that, under the circumstances present here, the defendant's contention is without merit.

The ancient rule of the English common law was that, in all trials for felony, a jury once impaneled and sworn

could not be permitted to separate before it had agreed on a verdict. 1 Chitty Cr. L. 628; see *Powell v. Commonwealth,* 182 Va. 327, 28 S.E.2d 687.

In *State v. Pontery,* 19 N.J. 457, 117 A.2d 473, the following dissection of the contemporary state of the law relating to felony cases is made:

"The latitude allowed or the adherence to the rule varies according to the jurisdiction. A few states still maintain the dispersal of the jury is forbidden even where the defendant consents. In others, in increasing numbers, it is permitted in the discretion of the court but only where there is consent of the defendant. In others, dispersal is permitted in the discretion of the court excepting where the defendant objects, while in still others dispersal is permitted in the discretion of the court even when the defendant objects. The states adopting the last rule are in predominance by a large majority."

With specific reference to criminal cases of a capital nature, the Annotator in 21 A.L.R.2d 1088, states that in some jurisdictions it is within the discretion of the trial court to determine whether jurors shall be permitted to separate, while in other jurisdictions the trial court has no such authority. Seven jurisdictions, including England, are cited in support of the former proposition, while fifteen are cited as representative of the latter rule.

In an early case, Colorado aligned itself with those courts which permit the separation of jurors even in capital cases where assented to by the attorneys for the parties. At the same time, this court expressed its disapproval of the practice in serious criminal cases. Reference is had to the case of *Elkin v. People, supra,* and sufficient of the language appearing therein is being quoted to show its total application to this case:

"The single error assigned is, that the court by consent of counsel for the prisoner, and on part of the State

as well, permitted the jury to separate at one of its adjournments during the progress of the trial.

\* \* \*

"It is not pretended that any juror was guilty of misconduct during the interval of separation, or that any improper influences were brought to bear upon any member of the panel. The position assumed is, that the fact of separation was error *per se,* for which the judgment should be reversed.

"The decided weight of authority is so clearly the other way in cases like the present, that we deem it unnecessary to review the decisions bearing upon the point. The subject is fully considered, and many authorities cited in *Stephens v. The People,* 19 N.Y. 549; see also, *McKinney v. The People,* 2 Gil. 540, and *Jumpertz v. The People,* 21 Ill. 409.

"It is proper to observe, however, that we regard the practice of permitting jurors to separate during the trial of an important criminal case of the grade of felony, and especially in murder cases, as highly improper, even though the consent of the prisoner be obtained therefor.

"Such trials sometimes create considerable excitement in the public mind, and jurors being men, are liable to imbibe somewhat of the popular prejudices of the hour, if permitted to mingle with the masses during the progress of the trial.

"It not appearing that the rights of the prisoner in the present case were affected by the separation, the judgment will be affirmed."

Thus, upon review of a judgment of conviction, a presumption exists that the defendant had a fair trial before a competent court and jury and that both discharged their respective duties under the law. The burden is on the defendant to disclose and establish prejudicial error, if any. *St. Louis v. People,* 120 Colo. 345, 209 P.2d 538. See *Elkin v. People, supra.* The mere possibility of prejudice is insufficient to warrant reversal. *Walker v. People,* 126 Colo. 135, 248 P.2d 287;

*Hood v. People,* 130 Colo. 531, 277 P.2d 223. And to constitute grounds for setting aside a verdict because of the alleged misconduct of the jury, it is incumbent upon the defendant to show that he was prejudiced thereby. *Moore v. People,* 125 Colo. 306, 243 P.2d 425. See also *Johnson v. People,* 152 Colo. 586, 384 P.2d 454, where the jury separated for thirty-three days during a trial postponement and we stated that "no prejudice is shown, and there is no suggestion of any misconduct on the part of the jury during this interval, the jurors having been carefully admonished as to their conduct prior to the separation."

■ Turning to the issue present here, we specifically hold that where defense counsel expressly agrees to separation of the jury in a capital case, error cannot be predicated on that procedure in the absence of a showing of prejudice to the defendant. The defendant has the burden of proof, and in this case that burden has not been met.

Complaint is made that the trial court erred in overruling defendant's motion to strike the testimony relating to the beating of Lorraine Segura and also erred in giving an instruction to the jury embracing the felony murder doctrine, the contention being that the evidence here was insufficient to support a conviction for murder stemming from the perpetration of one of the enumerated felonies.

■ Eliminating, for the moment, consideration of the felony murder doctrine, it is clear that evidence pertaining to the attack upon Lorraine was admissible under the well-established rule that other offenses may be shown in evidence when they are so interwoven with the principal transaction that it is necessary to show them in order to give a true and fair understanding of the offense charged. *Monge v. People,* 158 Colo. 224, 406 P.2d 674. It is obvious that evidence of the attack upon Lorraine was inextricably intertwined with the

slaying of Chris and explanatory of the entire transaction which resulted in his death.

There was evidence present here from which the jury could find the defendant guilty of murder in the first degree under either of at least two theories — or both. The instructions given to them embodied both theories.

■ First, under the evidence the jury obviously could have found that the defendant concealed himself and was "lying in wait" for Chris, conduct ordained by statute to be murder in the first degree. C.R.S. 1963, 40-2-3.

■ Secondly, the record is clearly adequate to sustain a jury finding that the homicide arose from the defendant's attempt to commit mayhem upon his wife, also conduct amounting to murder in the first degree. C.R.S. 1963, 40-2-3. A physician who attended Lorraine testified that she had multiple bruises about the face, arms, hands, back, and chest, and extensive and multiple lacerations of the scalp extending in the entire depth of the scalp to the skull bones. She incurred a fracture of the right forearm and a skull fracture.

■ The trial court sustained an objection by the defense to a question put by the district attorney seeking to elicit the extent of permanent disability of the forearm, if any, which resulted from the attack; and, reading the record as a whole, it is arguable whether the defendant had committed the completed crime of mayhem as defined by C.R.S. 1963, 40-2-24. In our view, however, the evidence is sufficient to establish an attempt.

The homicide was so closely connected in point of time, place, and continuity of action with the attack upon Lorraine that the totality of the defendant's conduct amounted to one continuous, integrated transaction. The jury could well find that the defendant struck Chris in order to avoid the detection of his vicious assault upon Lorraine and that the homicide was connected to the initial crime and emanated therefrom. *Bizup v. People,*

150 Colo. 214, 371 P.2d 786, cert. denied, 371 U.S. 873, 83 S. Ct. 144, 9 L.Ed.2d 112.

 In addition to the two premises of first degree murder recited above, under the evidence the jury could also base its verdict of guilty on the theory that the homicide was committed with a deliberate and premeditated design.

The judgment is affirmed, and it is ordered that the same be executed during the week commencing on midnight Saturday, June 25, 1966.