549 P.2d 1092 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Rosa Lee MILLER, Defendant-Appellant.
No. 75-211.
Colorado Court of Appeals, Div. I.
January 22, 1976.
Rehearing Denied February 13, 1976.
Certiorari Granted May 17, 1976.
*1094 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Thomas J. Tomazin, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, Mary G. Allen, Deputy State Public Defender, Denver, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
In July of 1974 defendant, Rosa Lee Miller, was arrested and charged with attempted theft of 14 credit cards in violation of §§ 18-2-101 and 18-4-401, C.R.S.1973. The People sought and obtained a felony conviction, and defendant appeals. She first asserts that the trial court erred in admitting evidence of the "street" value, of floor limits of the credit cards and of the rewards offered by credit card companies for the return of lost or stolen cards. She concludes that, in the absence of other competent evidence to establish that the cards were worth $100 or more, see § 18-4-401(2), C.R.S.1973, the felony conviction must be reversed. Defendant also contends that submission to the jury of an instruction concerning the credibility of witnesses, in which the words "including the defendant", though crossed out, were still visible, was reversible error in that it called the jury's attention to the fact that she failed to testify on her own behalf. We find no merit in these contentions and affirm defendant's conviction.
The complaining witness, Harold King, lost 14 credit cards on July 24, 1974. The next day he received a telephone call from a woman who stated that her son had found the credit cards and that she would sell them to him. King promptly telephoned the police, who told him to arrange a meeting with the caller. When the woman again contacted King, she informed him that she would have no trouble in getting $2000 for the cards and demanded $1000 for their immediate return. They agreed to complete the transaction in one-half hour.
King went to police headquarters, and arrangements were made for two officers to follow him. He then drove to the meeting place, where he was approached by defendant, who asked if he had the money. The police thereupon arrested defendant and took from her a brown bag containing some of King's missing credit cards. Defendant later produced the remaining cards and admitted that she had made the two telephone calls.

Evidentiary Rulings
The peculiar value of a credit card is not normally a price which the holder may command for the transfer of his card. It is instead the worth of the privilege to purchase goods or services on credit. That this privilege has value is clear; however, difficulties arise in determining this value, and hence that of the cards, in monetary terms.
As a general rule "value" in a theft case is market value, the amount a willing buyer would pay to the true owner for the stolen item. People v. Marques, 184 Colo. 262, 520 P.2d 113; Noble v. People, 173 Colo. 333, 478 P.2d 662. This principle applies in those cases where the property in question is of the type regularly sold or traded in normal business or commercial channels. However, the theft statute, § 18-4-401, C.R.S.1973, proscribes the unlawful taking, obtaining, or exercising of control over anything of value, not just those things whose value may be expressed in terms of a market price. Accordingly, in circumstances such as those of the instant case, where the stolen item does not change hands through any legally recognized market transaction, it is permissible to show its value by any evidence which bears objectively on the matter. Negron v. State, 306 So.2d 104 (Fla.). See Mance v. State, 5 Ga.App. 229, 62 S.E. 1053.
One objective measure of the value of a credit card is its price on the "street", *1095 i. e., in the course of unlawful or illegal trade with a view to its criminal abuse. See Jalbert v. United States, 375 F.2d 125 (5th Cir.); United States v. Ciongoli, 358 F.2d 439 (3d Cir.). This price represents the value to a person willing to buy the card for the unlawful purpose of purchasing goods, without payment, on the credit of the legitimate card holder.
"Street" value is a reflection of the purchasing power of a particular credit card. Accordingly, the authorized line of credit on the card or its "floor limit", i. e., the value of a purchase that could be completed without the necessity of obtaining express authorization from the credit card company, is also an objective measure of a card's value. Cf. United States v. Devall, 462 F.2d 137 (5th Cir.); United States v. Kramer, 289 F.2d 909 (2nd Cir.). Hence, the evidence concerning both the "street" value and the floor limits of King's credit cards was admissible to establish their value.
It is true that rewards offered by the issuer of credit cards for the return of lost or stolen cards may also constitute an objective measure of the value of the card. Here, the People elicited testimony concerning the amount of rewards offered by Bank Americard and Master Charge, each of whom had issued cards involved here, for the return of missing credit cards. However, while this testimony established that the amount of a reward may vary based on many diverse factors, including the circumstances surrounding the disappearance of a card, it failed to relate the rewards to any objective measurement of the value of the specific cards in question.
Defendant has not explained how the testimony about the rewards generally offered by credit card companies for the return of missing cards may have affected the verdict, since there was no testimony concerning the amount of the rewards that would have been offered for the return of these particular credit cards. The burden is on her to disclose and establish prejudicial error, Kukuljan v. People, 129 Colo. 116, 267 P.2d 1017; St. Louis v. People, 120 Colo. 345, 209 P.2d 538, and the mere possibility of prejudice is insufficient to warrant reversal. Segura v. People, 159 Colo. 371, 412 P.2d 227; Walker v. People, 126 Colo. 135, 248 P.2d 287. In this case, competent, undisputed testimony clearly established that the value of the credit cards exceeded $100. Hence, we conclude that, although the evidence concerning the amount of rewards was of questionable relevance, its admission did not affect defendant's right to receive a fair trial. See Walker v. People, supra; St. Louis v. People, supra. Cf. People v. Barker, 180 Colo. 28, 501 P.2d 1041.

Sufficiency of the Evidence
In determining whether the evidence is legally sufficient to sustain defendant's felony conviction, an appellate court must view it in the light most favorable to the jury's verdict. The court may neither assign weight to specific evidence nor appraise the credibility of the testimony. People v. Medina, Colo., 522 P.2d 1233; Wilson v. People, 143 Colo. 544, 354 P.2d 588. It may only assess the evidence as a whole to ascertain whether a jury could reasonably have reached the result it did. Here, we conclude that there was ample testimony, both of "street" value and of floor limits, from which the jury could reasonably have determined that the actual value of the credit cards was at least $100. See § 18-4-401(2), C.R.S.1973.
Defendant herself stated to King that the "street" value of the 14 cards was $2000. The accuracy of this valuation by defendant was supported by opinion testimony of an expert that the "street" value of the Bank Americard alone ranged from $25 to $200. He also referred to a specific sale which had been concluded for $125.
The undisputed testimony concerning the floor limits of only two of the 14 credit cards at issue here provides additional support for the conclusion that the value of the cards was at least $100, inasmuch as an unauthorized possessor of the cards could obtain merchandise valued in at least that amount with little risk that the merchant *1096 would discover the improper use of the cards. The evidence established the floor limit of King's Bank Americard to be $100 and, in addition, that of his Master Charge to be at least $15.

Rebuttal Testimony
The fact that most of the People's testimony concerning the value of the credit cards was admitted in rebuttal of defendant's evidence is not significant. The admission of rebuttal testimony is largely discretionary with the trial court. Wertz v. People, 160 Colo. 260, 418 P.2d 169. The People are not required to anticipate testimony the defendant will offer in defense and are entitled to introduce any competent evidence to explain or refute defendant's proof, even though the rebuttal testimony tends to support their case in chief. Moore v. People, 171 Colo. 338, 467 P.2d 50. Since defendant rested her entire defense on the proposition that credit cards have no market value, we find no abuse of the trial court's discretion in allowing the People to introduce the value testimony in rebuttal.

The Instruction
Instructing the jury on the credibility of the witnesses, the trial court submitted Colorado Jury Instructions (Criminal) 3:8 after having crossed out the words "including the defendant". These words, however, were not totally obliterated and could be deciphered by the jury. Although defendant failed to object to the instruction as given or to allege this putative error in her motion for a new trial, she now argues that giving the instruction in this form constituted plain error. See Crim.P. 52(b).
Where an issue is raised for the first time on appeal, the court must initially consider whether the alleged error falls within the ambit of Crim.P. 52(b). See People v. Barker, supra. A plain error is an error seriously affecting substantial rights of the accused. Unless there is a reasonable possibility that the alleged error contributed to defendant's conviction, reversal of the proceedings below is not required. Each case must be resolved on the particular facts and law at issue. People v. Barker, supra.
Here, we do not believe that the fact that the words in question were not totally obliterated from the instruction contributed to defendant's conviction, even though defendant herself did not testify. At no time in the trial did she dispute the testimony of any of the witnesses. Thus, defendant's credibility was not even remotely at issue. In our view, the instruction on credibility, as given to the jury, was not an impermissible comment on defendant's failure to testify and did not constitute plain error.
We have considered the other contentions of defendant and find them to be without merit. Therefore, the judgment is affirmed.
COYTE and STERNBERG, JJ., concur.