Steven L. WISER, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 84SC426.

Supreme Court of Colorado, En Banc.

Feb. 9, 1987.
Rehearing Denied March 9, 1987.

David F. Vela, Colorado State Public Defender, Seth J. Benezra, Janet Y. Fullmer, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Colorado Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Wiser*, No. 82CA0990 (Colo.App. Sept. 6, 1984) (not selected for official publication), affirming the conviction of the defendant, Steven L. Wiser, of first degree burglary and felony menacing after a jury trial in the Adams County District Court. The court of appeals decided that two incidents of juror misconduct during the deliberative phase of the defendant's trial, while improper, did not require reversal of the conviction. We affirm the judgment of the court of appeals.

On July 31, 1981, the defendant was charged by information with first degree burglary, felony menacing, and a crime of violence. The charges against the defendant were based on an incident on July 29, 1980, in which the defendant entered an apartment and threatened a woman with a knife as a result of a disagreement about a debt owed the defendant by the woman and her boyfriend. The case proceeded to trial and on March 24, 1982, the jury found the defendant guilty of burglary and felony menacing.

In support of his motion for a new trial, the defendant submitted affidavits of the district court bailiff and the defendant's counsel based on information they gained from an informal meeting in the judge's chambers with the members of the jury after the jury returned its verdicts. Both of the affiants stated that they had been told by a juror that after the first day's deliberation the juror asked a friend who was a legal secretary about the source of jury instructions.[1] The juror said that he was told that the instructions usually have numbers on them indicating their source. The bailiff and the attorney also stated in their affidavits that another juror informed them that she had consulted a dictionary for a definition of burglary. The juror indicated that the definition confused her because it included a reference to theft. At a hearing on the defendant's motion for a new trial, the district court determined that even if it accepted the allegations in the affidavits as true, the allegations were insufficient to establish that the defendant was prejudiced by the juror misconduct, and the court denied the motion for a new trial.

The defendant raised the juror misconduct issue, among other issues, in his appeal to the court of appeals. The court of

---

1. Both affiants stated that the juror told them that he did not discuss the facts of the instant case with his friend.

appeals agreed with the defendant that the consultation of outside sources by the jurors was misconduct, but it rejected the defendant's invitation to presume that the juror misconduct was prejudicial. The court held that it was the defendant's burden to show that the misconduct was prejudicial and that because the affidavits contained no indication that the jurors' exposure to outside information actually influenced their votes, the defendant failed to carry his burden of establishing prejudice. We granted certiorari to consider the manner of proof of prejudice to the defendant when a jury receives extraneous information during deliberations.

## I.

▉▉ The court of appeals correctly determined that the resort of one of the jurors to a dictionary for a definition of the crime with which the defendant was charged was improper. Referring to a juror's consultation of a dictionary in *Niemand v. District Court*, 684 P.2d 931, 934 (Colo.1984), we said, "Jurors are required to follow only the law as it is given in the court's instructions; they are bound, therefore, to accept the court's definitions of legal concepts and to obtain clarifications of any ambiguities in terminology from the trial judge, not from extraneous sources." *See also Alvarez v. People*, 653 P.2d 1127 (Colo.1982). The other juror's inquiry about the source of jury instructions was also irregular conduct that might hold the potential for distorting the jury's deliberations. As *Niemand* and *Alvarez* illustrate, however, the exposure of jurors to extra-record sources of information about a case does not automatically require a new trial. Rather, the need for a new trial should be determined by evaluating the nature and circumstances of the improper contact in light of the applicable standard.

Our previous cases have not provided entirely consistent guidelines for deciding whether the exposure of jurors to extraneous information or influences mandates a new trial. In most cases we have held that before a new trial will be ordered a defend-ant must show that the conduct complained of actually prejudiced him. *See, e.g., People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974); *People v. Peery*, 180 Colo. 161, 503 P.2d 350 (1972); *Milano v. People*, 159 Colo. 419, 412 P.2d 225 (1966); *Segura v. People*, 159 Colo. 371, 412 P.2d 227 (1966). In *People v. Boulies*, 690 P.2d 1253, 1256 (Colo.1984), however, we held that the presence of an alternate juror in the jury room during deliberations "sufficiently imping[ed] upon the defendant's constitutional right to a jury trial to create a presumption of prejudice that, if not rebutted, requires reversal." (Footnote omitted.)

The problem with both the requirement that the defendant demonstrate actual prejudice and the rebuttable presumption of prejudice approach is the difficulty, once a verdict has been reached, in obtaining evidence of actual prejudice or evidence with which to rebut the presumption because of the longstanding rule proscribing evidence concerning the mental processes of jurors. The rule is codified as CRE 606(b), which provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any thing upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror.

Under CRE 606(b), affidavits from jurors about exposure to extraneous information or influences are admissible. The rule, however, precludes admission of the only evidence relevant to prove whether a defendant was prejudiced as a result of the improper contact. *See, e.g., United States v. Greer*, 620 F.2d 1383 (10th Cir.1980) (because of the limitations of FRE 606(b) a presumption of prejudice cannot be rebut-

ted after a verdict has been returned);[2] *People v. Cornett,* 685 P.2d 224 (Colo.App. 1984) (reaching the same conclusion under CRE 606(b)). *See also* D. Louisell and C. Mueller, *Federal Evidence* § 291, at 55 (1986 Supp.).[3]

An approach that avoids the problems arising under CRE 606(b) requires the trial court to determine what effect juror misconduct would have had on a typical jury. *See, e.g., McPhee v. People,* 108 Colo. 530, 120 P.2d 814 (1941); *McLean v. People,* 66 Colo. 486, 180 P. 676 (1919). This objective test has been widely accepted by courts and recommended by commentators. *See, e.g., Owen v. Duckworth,* 727 F.2d 643 (7th Cir.1984); *United States v. Vasquez,* 597 F.2d 192 (9th Cir.1979); *United States v. Howard,* 506 F.2d 865 (5th Cir.1975); *Miller v. United States,* 403 F.2d 77 (2d Cir. 1968); D. Louisell and C. Mueller, *supra,* § 291, at 55 (1986 Supp.);[4] M. Berger and J. Weinstein, *Weinstein's Evidence* ¶ 606[05] (1985). *See also* Comment, *Impeachment of Jury Verdicts,* 25 U.Chi.L. Rev. 360, 364 (1958). Most courts have decided that the relevant question is whether there is a "reasonable possibility" that extraneous contact or influence affected the verdict to the detriment of the defendant. *See, e.g., United States v. Perkins,* 748 F.2d 1519 (11th Cir.1984); *United States v. Weisman,* 736 F.2d 421 (7th Cir. 1984); *United States v. Bruscino,* 687 F.2d

938 (7th Cir.1982); *United States v. Bruscino,* 662 F.2d 450 (7th Cir.1981); *United States v. Bagley,* 641 F.2d 1235 (9th Cir. 1981); *Vasquez,* 597 F.2d 192; *Howard,* 506 F.2d 865; *Paz v. United States,* 462 F.2d 740 (5th Cir.1972); *United States v. Posner,* 644 F.Supp. 885 (S.D.Fla.1986); *United States v. Steele,* 602 F.Supp. 53 (D.Nev.1985); *United States v. O'Keefe,* 586 F.Supp. 998 (E.D.La.1983); *United States v. Castello,* 526 F.Supp. 847 (W.D. Tex.1981); *United States v. Pinto,* 486 F.Supp. 578 (E.D.Pa.1980); *State v. Doe,* 101 N.M. 363, 683 P.2d 45 (N.M.App.1984); *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982); *State v. Graham,* 422 So.2d 123 (La.1982); *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Edwards v. State,* 637 P.2d 886 (Okla.Crim.App.1981).[5]

■ We believe that the objective test of whether there is a reasonable possibility that extraneous information or influence affected the verdict should be used to determine if a new trial is required in cases like the instant one. The test is consistent with CRE 606(b)'s purpose of protecting the privacy of jurors. *See* M. Berger and J. Weinstein, *supra,* ¶ 606[05]. The objective test is also more likely to enhance the stability of jury verdicts than an approach that required jurors to reconstruct condi-

---

**2.** FRE 606(b) is identical to CRE 606(b).

**3.** In an effort to avoid imposing impossible burdens of proof on either the prosecution or the defendant, some courts have interpreted Rule 606(b) to permit the introduction of evidence of jurors' mental processes where the evidence relates to the improper exposure of jurors to outside information or influences. *See, e.g., Krause v. Rhodes,* 570 F.2d 563 (6th Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 517 (1978).

**4.** Louisell and Mueller observe:
Sound post-Rules authority expresses impatience with the presumption mechanism in assessing jury misconduct. The ground of criticism is that the inability of the party defending the verdict to come up with evidence dislodging the presumption (most such evidence being of the sort which FRE 606(b) would bar), coupled with the fact that much

jury misconduct seems harmless and trivial, forces courts into artificial inquiries as to whether the conduct is of the sort which brings the presumption into play in the first instance. Clearly the real question is whether the misconduct probably affected the verdict (or, and this seems to be nearly the same thing, whether there is any "reasonable possibility" of such effect). (footnote omitted).
*Federal Evidence* § 291, at 55 (1986 Supp.).

**5.** Some courts applying the objective test, the determination of what effect juror misconduct would have had on a reasonable jury, have stated that reversal is required where there is the "slightest possibility" that a typical juror would have been affected. *See United States v. Marx,* 485 F.2d 1179, 1184 (10th Cir.1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); *Dallago v. United States,* 427 F.2d 546, 560 (D.C.Cir.1969); *United States v. Adams,* 385 F.2d 548, 550-51 (2d Cir.1967).

tions of jury deliberations and retrace their mental processes sometimes long after a verdict has been rendered. *See* M. Berger and J. Weinstein, *supra,* ¶ 606[03]. Because it eschews rebuttable presumptions that are conclusive in effect given the impossibility of rebuttal, the objective test does not require the invalidation of jury verdicts on the basis of insignificant extraneous information. Requiring a new trial where there is a reasonable possibility that the verdict was tainted by the introduction of outside information or influences into the jury deliberations will provide sufficient protection for the defendant.

## II.

In most cases involving juror misconduct, the trial court should hold a hearing before deciding whether there is a reasonable possibility that the misconduct affected the jury's verdict. *See Owen v. Duckworth,* 727 F.2d at 646; *United States v. Bagnariol,* 665 F.2d 877 (9th Cir. 1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). In this case, however, a remand for a hearing under the objective test is unnecessary. Considering the reasonable inferences most favorable to the defendant that can be drawn from the affidavits, we fail to see how he could have been prejudiced by the conduct described in the affidavits. The only specific detail included in the affidavits about the dictionary definition of burglary resorted to by the juror was that the definition contained a reference to theft that confused the juror. It is reasonable to assume that the reference to theft and the resulting confusion, if it had any effect on the jury's deliberations, would have favored the defendant by creating an impression that theft, which was not alleged or established by the prosecution in this case, was an element of the offense of burglary.[6] As

to the response to the other juror's inquiry about the source of jury instructions, we cannot see how this extraneous information could have resulted in prejudice to the defendant. Because there is no reasonable possibility that the extraneous information acquired by the jurors in this case affected the verdict, we uphold the defendant's conviction.

The judgment of the court of appeals is affirmed.

ERICKSON, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

ERICKSON, Justice, specially concurring:

I agree with the majority's conclusion that the juror misconduct in this case does not warrant a new trial. I write separately because I believe that the majority's "reasonable possibility" test places a minimal burden on the moving party to demonstrate that juror misconduct prejudicially affected the jury's verdict, and denigrates the sanctity that should be afforded a jury's verdict.

This court has often held that the party moving for a new trial bears the burden of proving actual prejudice when asserting that juror misconduct or improper influences on the jury affected the verdict. *People v. Mackey,* 185 Colo. 24, 521 P.2d 910 (1974); *People v. Peery,* 180 Colo. 161, 503 P.2d 350 (1972); *Milano v. People,* 159 Colo. 419, 412 P.2d 225 (1966); *Moore v. People,* 125 Colo. 306, 243 P.2d 425 (1952). *But see People v. Boulies,* 690 P.2d 1253 (Colo.1984) (the presence of an alternate juror in the jury room during deliberations sufficiently impinges upon the defendant's constitutional right to a jury trial to create a presumption of prejudice).

---

**6.** The defendant was convicted of first degree burglary under section 18–4–202, 8B C.R.S. (1986), which provides:

(1) A person commits first degree burglary if he knowingly enters or remains unlawfully in a building or occupied structure with intent to commit therein a crime, other than trespass

as defined in this article, against a person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, he or another participant in the crime assaults or menaces any person, or he or another participant is armed with explosives or a deadly weapon.

In 1980, we adopted CRE 606(b), which codified the long-standing rule that jurors may not testify as to their own decision-making process or as to statements made during the course of deliberations. Because Rule 606(b) makes actual prejudice difficult to prove, some courts have held that prejudice is rebuttably presumed where extraneous juror contact occurs. *See, e.g., United States v. Greer,* 620 F.2d 1383 (10th Cir.1980). However, because Rule 606(b) makes it equally difficult to prove the absence of prejudice, a party opposing a motion for a new trial cannot effectively rebut the presumption of prejudice.

I agree with the majority that the court's inquiry should focus on the effect that the juror misconduct would have on a typical jury. However, I believe that a "reasonable possibility" test is a threshold standard that may be met in many cases where the verdict should not be impeached. Even where it is probable that juror misconduct *did not* affect the verdict, there may exist a "reasonable possibility" that improper conduct of a juror prejudiced the movant. The movant need not establish that prejudice was certain or even likely; the movant must only prove that prejudice was reasonably possible. In my opinion, that minimal showing is not sufficient to impeach a jury's verdict and to warrant a new trial. *See United States v. Jones,* 707 F.2d 1169 (10th Cir.) (something more than unverified conjecture is necessary to justify a new trial on the ground of juror misconduct where only potentially suspicious circumstances are shown), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983); *United States v. Mares,* 383 F.2d 811 (10th Cir.1967) (mere showing of possibility of prejudice is insufficient to warrant a new trial), *cert. denied,* 390 U.S. 961, 88 S.Ct. 1060, 19 L.Ed.2d 1157 (1968). Jurors are presumed to have performed their duties

faithfully. *People v. Lesh,* 668 P.2d 1362 (Colo.1983); *United States v. Hendrix,* 549 F.2d 1225 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977).

In my view, a new trial should not be granted unless the movant proves that actual prejudice from juror misconduct or extraneous juror contact is more probable than not. That rule is consistent with the standard that must be applied by a trial court when ruling on a motion for new trial based upon newly discovered evidence. *See Williams v. District Court,* 700 P.2d 549 (Colo.1985) (a defendant seeking a new trial on the ground of newly discovered evidence must establish that the evidence was discovered after trial, that defendant and defense counsel exercised diligence to discover all possible evidence favorable to the defendant, that the newly discovered evidence is material, and that the newly discovered evidence probably will produce a different result); *People v. Scheidt,* 187 Colo. 20, 528 P.2d 232 (1974). By requiring the movant to prove that in the absence of juror misconduct a different verdict was more probable than not, the movant retains the burden of establishing that a new trial is necessary to protect his rights.[1]

I am authorized to say that Justice VOLLACK joins me in this special concurrence.

---

**1.** I express no opinion on the standard that must be applied in a civil case where juror misconduct is shown. *See Aldrich v. District Court,* 714 P.2d 1321 (Colo.1986) (the test for determining whether a new trial will be granted because of the misconduct of jurors or the intru-

sion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge); *Butters v. Dee Wann,* 147 Colo. 352, 363 P.2d 494 (1961).