FILED
United States Court of Appeals
Tenth Circuit

August 30, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRISTOPHER SELECTMAN,

Petitioner-Appellant,

v.

ARISTEDES ZAVARAS; THE
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

Respondents-Appellees.

No. 11-1215
(D.C. No. 1:09-CV-02006-WJM)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **BRISCOE,** Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

Petitioner Christopher Selectman, proceeding pro se, seeks a Certificate of
Appealability (COA) pursuant to 28 U.S.C. § 2253 in order to challenge the district
court's dismissal of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. Because
Selectman has not made the requisite showing for a COA, we deny his application for a
COA and dismiss this matter.

---

[*] This order is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel.

## I

### *Factual Background*

On February 25, 1994, Selectman, who was sixteen years old at the time, and two other individuals telephoned McKinley Dixon to purchase marijuana and arranged to meet Dixon in person to complete the transaction. ROA, Vol. 1 at 83–84. While the precise events that transpired during the meeting were "disputed at trial," several witnesses testified that Selectman "pull[ed] a gun." Id. at 84. At some point during the encounter, Dixon was shot and killed.

### *Trial and Direct Appeal*

Selectman was charged in the District Court of Arapahoe County, Colorado with "Murder in the First Degree - Felony Murder," "Murder in the Second Degree," "Criminal Attempt (To Commit Aggravated Robbery)," "Mandatory Sentencing for a Crime of Violence - Deadly Weapon," and "Mandatory Sentencing for a Crime of Violence - Death of Victim." State R., Vol. 1 at 39.

"On July 6, 1995, after a . . . jury trial, [Selectman] was convicted of murder in the first degree (felony murder), murder in the second degree, and attempt to commit aggravated robbery." ROA, Vol. 1 at 63. After trial, but before sentencing, Selectman filed a motion for new trial. State R., Vol. 1 at 213. In his motion, Selectman "assert[ed] that the jury's verdict must be vacated because there was a reasonable possibility that extraneous influences and extraneous information affected the verdict." Id. The motion identified that "[Juror H] was confronted and cursed at by a member of the victim's

family," that another juror "had come into contact [in a courthouse elevator] with a group of individuals [from] the prosecution side of the courtroom during the trial" making "negative comments regarding the proceedings," and that "most, if not all, members of the jury were advised [of these contacts] prior to . . . deliberations." Id. Further, the motion indicated that jurors "considered extraneous and prejudicial information regarding gang tattoos and speculated as to possible gang overtones connected to the case." Id. After a hearing, the trial court denied the motion. See id., Vol. 2 at 444. On May 6, 1996, the trial court sentenced Selectman to life in prison without parole. ROA, Vol. 1 at 63.

Selectman appealed his conviction and sentence to the Colorado Court of Appeals (CCA), asserting, as one basis for reversal, that the district court erred in denying the motion for new trial. Id. at 150, 169–71. The CCA affirmed Selectman's conviction and sentence on May 24, 2001. Id. at 150. The Colorado Supreme Court then denied certiorari review on February 25, 2002. Id. at 218.

*State Post-Conviction Relief*

On April 29, 2002, Selectman filed a pro se motion for post-conviction relief in Colorado state court pursuant to Colorado Rule of Criminal Procedure 35(c) (Rule 35(c)). State R., Vol. 2 at 504. He then supplemented this motion on January 14, 2004, with the assistance of counsel. Id., Vol. 3 at 549. As one of the grounds for relief, Selectman argued that he received ineffective assistance of counsel in pursuing his motion for new trial because his counsel failed to adequately investigate and litigate the allegations that

3

jurors had been intimidated. Id. at 553. He requested an evidentiary hearing to develop the issues raised in the Rule 35(c) motion. Id. at 552.

The trial court summarily denied the Rule 35(c) motion on February 11, 2004. Id. at 641–42, 704. Selectman appealed this decision to the CCA. Id. at 705. On March 30, 2006, the CCA vacated the trial court's decision and remanded the case to the trial court to "make findings of fact and conclusions of law" and to determine whether a hearing was necessary. Id. at 705–06.

On remand, the trial court issued a written order denying Selectman's Rule 35(c) motion and his request for an evidentiary hearing. ROA, Vol. 1 at 69. Selectman appealed this decision to the CCA, and the CCA affirmed. Id. at 286. The Colorado Supreme Court denied certiorari review on January 12, 2009. Id. at 317.

*Federal Habeas Proceedings*

In August of 2009, Selectman filed a habeas petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Colorado. In the petition, he asserted ten claims for relief:

> 1. The [Colorado] state courts misapplied the Colorado Children's Code by concluding that [Selectman's] statements to police outside a parent's presence were admissible, in violation of the Fifth, Sixth, and Fourteenth Amendments.
>
> 2. [Selectman's] decision to waive his Fifth Amendment privilege against self-incrimination and respond to police questioning was invalid because the police failed to advise him that he could be tried as an adult.
>
> 3. The trial court's self-defense instructions were erroneous and incomplete, in violation of the Fifth and Fourteenth Amendments.

4

4. The trial court's jury instructions on attempted aggravated robbery and felony murder were erroneous and misleading, in violation of the Fifth, Sixth, and Fourteenth Amendments.

5. The trial court's theory of defense instruction was incomplete, in violation of the Fifth, Sixth, and Fourteenth Amendments.

6. The trial court erred in limiting [Selectman's] cross-examination of three witnesses, in violation of the Sixth Amendment Confrontation Clause.

7. The trial court's imposition of a life sentence without parole violated the Eighth Amendment and the Fourteenth Amendment Due Process Clause because [Selectman] was a juvenile offender. The life sentence also constituted a bill of attainder under U.S. Const. art. 1 § 3.

8. [Selectman] was denied his Sixth Amendment right to the effective assistance of counsel when counsel failed to present adequate evidence at the hearing in support of [his] motion for a new trial and to argue all issues and points of law.

9. [Selectman's] Sixth Amendment right to counsel was violated because: (a) trial counsel labored under a conflict of interest in litigating the new trial motion; and (b) [Selectman's] waiver of the conflict was invalid, as he was not adequately advised about counsel's difficulty in litigating the new trial motion on account of the conflict.

10. [Selectman's] Sixth Amendment right to a fair trial was violated when jurors considered information during deliberations that one of the jurors had been followed and cursed at by a person she believed to be a member of the victim's family, and that members of the victim's family had contacted and made negative comments to several of the jurors.

ROA, Vol. 1 at 402. The district court dismissed the first and tenth claims as procedurally barred. See id. at 325–26, 403. Then, after considering the merits of the remaining claims, the district court denied Selectman's § 2254 petition, dismissed the action with prejudice, and denied any request for a COA. See id. at 443. Selectman then filed a motion to proceed in forma pauperis (IFP) on appeal, which the district court

5

denied.  Id. at 454.  Selectman renews his IFP motion in this court.

## II

Selectman appeals only the district court's denial of his § 2254 petition based on his ineffective assistance of counsel claim – claim eight listed above.[1]  Before Selectman may appeal the district court's denial of his § 2254 petition, he must obtain a COA.  See 28 U.S.C. § 2253(c)(1)(A).  A COA may issue only upon a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court denies a habeas petition on the merits, a COA may issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  We must incorporate the Antiterrorism and Effective Death Penalty Act's (AEDPA) deferential treatment of state court decisions and findings into our consideration of a request for a COA.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).

To prevail on his § 2254 petition, Selectman must show that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

---

[1] We note that Selectman's § 2254 petition asserted two ineffective assistance of counsel claims – claim eight and claim nine listed above.  Claim eight asserted that his counsel failed to adequately investigate and litigate the new trial motion, and claim nine alleged that counsel had an actual conflict of interest when pursuing the new trial motion.  Because Selectman's application for a COA did not address counsel's alleged conflict of interest, we conclude that this issue was not raised on appeal and confine our review to claim eight.

or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). We presume the factual findings of the state court are correct unless the petitioner rebuts this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court's decision is contrary to clearly established federal law where "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court's decision is an unreasonable application of clearly established federal law where it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the . . . case." Id.

III

Based on our independent review of the record and construing Selectman's pro se pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam), we conclude that he has not demonstrated that reasonable jurists would debate whether the decisions of the state courts reviewing his case were contrary to, or based on an unreasonable application of, clearly established federal law or were based on an unreasonable determination of the facts. Therefore, we deny Selectman's application for a COA.

Selectman argues that he received ineffective assistance of counsel in pursuing his motion for new trial because his counsel failed to adequately investigate and litigate the

7

allegations that jurors had been intimidated. To establish ineffective assistance of counsel, Selectman must show (1) deficient performance, meaning that "counsel's representation fell below an objective standard of reasonableness," and (2) prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984). "[W]hen evaluating an ineffective assistance of counsel claim under § 2254(d)(1), our review is 'doubly deferential.' We defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how best to represent a client." Crawley v. Dinwiddie, 584 F.3d 916, 922 (10th Cir. 2009) (citing Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009)).

Applying the standard set forth in Strickland, the CCA explained:

[Selectman] contends his attorney rendered ineffective assistance because he failed to litigate adequately the motion for new trial. We disagree because his attorney investigated the juror incident extensively and obtained affidavits from a number of jurors, including Juror M. Although defendant contends his attorney should have obtained a more extensive affidavit from Juror M[] and subpoenaed all the jurors, defendant has not alleged that any new information would have been presented, other than what was already before the trial court in some form, and has not shown that it would have affected the outcome of the case.

ROA, Vol. 1 at 293–95. Because the CCA applied the appropriate legal standard to the ineffective assistance of counsel claim, we may grant a COA only if Selectman demonstrates either (1) the CCA unreasonably applied Strickland to the facts, or (2) the CCA's findings were based on an unreasonable determination of the facts.

Selectman first argues that the CCA unreasonably applied Strickland to the facts.

8

Selectman argues that his counsel's performance was constitutionally deficient and that the deficient performance was prejudicial. He asserts that his counsel failed to obtain thorough statements from certain jurors regarding the intimidating incidents. He also contends that, during the hearing to consider the new trial motion, his counsel failed to adequately request notes written by the prosecutor's investigator from his interview with Juror M be admitted into evidence, failed to call the jurors and the prosecutor's investigator as witnesses, failed to argue all points of law and issues of fact, and failed to challenge adverse evidence.

After reviewing the record, we conclude that the CCA reasonably applied Strickland and determined that counsel's performance in pursuing the motion for new trial was neither constitutionally deficient nor prejudicial. When evaluating counsel's performance, we must consider Colorado's standard for granting a new trial for extraneous influences on a jury. Under Colorado law, a person seeking to set aside a verdict based on extraneous influences on a jury must establish through evidence the fact of the improper communication and that prejudice resulted. See Ravin v. Gambrell By & Through Eddy, 788 P.2d 817, 820 (Colo. 1990). However, the court may not consider "evidence concerning the mental processes of jurors." Wiser v. People, 732 P.2d 1139, 1141–42 (Colo. 1987) (discussing Colorado Rule of Evidence 606(b)).

With regard to Selectman's claim that his counsel failed to obtain thorough statements from certain jurors – Juror M, Juror H, and Juror T – regarding the intimidating incidents, the state court record indicates that counsel investigated the

9

events, submitted a motion for new trial based on the investigation, and supported the motion with affidavits from certain jurors and the defense investigator that interviewed the jurors. In fact, counsel supported the motion with affidavits from Juror M, Juror H, and Juror T. See State R., Vol. 1 at 215–29. These affidavits documented that a member of the victim's family "swear[ed] at" Juror H in a parking lot and that the jurors discussed this incident, that another juror came into contact in a courthouse elevator with a "group of people from the prosecution side of the court room [who were] . . . making negative comments about the case" and that this was discussed among the jurors, and that jurors discussed a gang related tattoo they observed on the victim's arm in photographs presented at trial. Id. at 216. These affidavits further indicated that "[s]ome of the jurors were intimidated by this information." Id. at 218. Thus, although Selectman contends that counsel failed to obtain the precise statements made to the jurors or the context in which these contacts occurred, the CCA reasonably concluded that counsel's performance was constitutionally adequate.

As for the remaining arguments, we conclude that Selectman has not established that counsel's performance was prejudicial. Selectman asserts that counsel failed to adequately request that the prosecutor's investigator's notes from his interview with Juror M be considered in conjunction with the motion for new trial. At the hearing on the motion for new trial, counsel requested that the court consider these notes. The trial court accepted the materials but deferred ruling on whether they could be considered. Based on our review of the state court record, it is unclear whether the trial court considered this

10

evidence in rendering its decision on the new trial motion.

Selectman contends that "[c]ounsel failed to exercise the skill, judgement [sic] and diligence of a competent attorney when they failed to remind the court to rule on the only credible evidence they attempted to introduce." COA Appl. at 10. However, even assuming that the trial court did not consider the evidence, Selectman did not establish a reasonable probability that the outcome would have been different had the notes been before the court. When denying the motion for new trial, the trial court reasoned: "'I don't know what was said or the context of what was said, and I cannot . . . make the conclusion . . . that there is a reasonable possibility that the misconduct affected the verdict . . . .'" ROA, Vol. 1 at 170 (first alteration in original). Although, as the CCA explained, "[t]he [notes] would have been new in that the investigator's report about Juror M[] reflected the confrontation with Juror H[] in a more serious light," id. at 288, these materials did not identify the precise statements made or provide the context of the statements. Thus, Selectman did not establish a reasonable probability that this evidence would have changed the trial court's decision. Further, even if counsel had reminded the court to definitively rule on the notes, it is not clear that this evidence would have been admissible because the notes documented Juror M's mental processes. See Wiser, 732 P.2d at 1141–42.

Selectman also asserts that counsel failed to call the jurors and the prosecutor's investigator as witnesses at the hearing on the motion for new trial. However, Selectman has not established that this testimony would have differed from the affidavits counsel

11

submitted in support of the new trial motion.  Selectman further contends that his counsel

declined to argue issues of law or fact in connection with the jury intimidation claim, but

these issues were addressed in detail in the motion counsel submitted to the court

requesting the new trial.  See State R., Vol. 1 at 213.

Beyond the arguments Selectman raises, with regard to the prejudice prong of

Strickland, we note the significance of the fact that, after the alleged intimidating

incidents with jurors occurred, "the jury deliberated for a lengthy period [(approximately

a day and a half)] and broke its deadlock only after a modified-Allen instruction was

given."  ROA, Vol. 1 at 290.  The trial court emphasized this fact in denying the motion

for new trial, reasoning that this "lessened the likelihood the jury was under pressure from

the incident or incidents" in reaching the verdict.  Id.  Although the CCA noted the length

of the jury's deliberations, it did not specifically rely on this fact when considering

Selectman's ineffective assistance of counsel claim.  Like the trial court, however, we

also view the length of the jury's deliberations following the alleged intimidating

incidents as significant, and as adding further support to the CCA's conclusion that there

was not a reasonable possibility that counsel's performance affected the trial court's

decision to deny the motion for new trial.  Thus, the CCA reasonably concluded that

Selectman failed to establish that the alleged deficiencies in counsel's performance were

prejudicial.

Second, Selectman argues that the CCA's findings were based on an unreasonable

determination of the facts.  He argues that "[t]he [CCA's] determination that the attorney

12

investigated the juror incident extensively is an unreasonable determination of the facts."

COA Appl. at 19. To demonstrate that counsel did not extensively investigate the

intimidating incidents, Selectman points to the following discussion between his counsel

and the trial court that occurred at the hearing on the motion for new trial and that

addressed the reason certain information was not included in the affidavits counsel

submitted in support of the motion:

> [Trial court:] How is it that after all the time that your office had and the careful investigation you did, that none of this showed up in the affidavits provided by these jurors?
>
> [Defense counsel:] Judge when we interviewed [Juror M], our investigator essentially asked some very closed-ended questions, received from her, if you will, a very truncated version of what took place.
>
> [Trial Court:] Why didn't you go back afterwards and get a further affidavit?
>
> [Defense counsel:] We could have; maybe we should have. We did not. . . . [O]ne of the concerns we had, after we received the response from the District Attorney when we received their brief, essentially there was the allegation there or the reference there was that we somehow were tampering with the jurors. It was difficult for us to approach them again, particularly in light of the response we received from the District Attorney.

ROA, Vol. 1 at 289–90 (internal quotation marks omitted). Although, based on this

discussion, it appears that Selectman's counsel could have done more investigation, this

does not constitute clear and convincing evidence that counsel did not extensively

investigate the claim. Selectman further contends that the CCA unreasonably determined

that the prosecutor's investigator's notes from his interview with Juror M were "before

the court." COA Appl. at 20. Assuming, without deciding, that the CCA made this

13

finding,[2] Selectman has not provided clear and convincing evidence that the trial court did not consider the notes when rendering a decision on the motion for new trial. As we previously noted, based on our review of the state court record, it is unclear whether the trial court considered this evidence. Thus, Selectman did not rebut the presumption that the CCA's factual findings were correct.

IV

Selectman also argues that the district court erroneously denied his § 2254 petition without conducting an evidentiary hearing to further develop the factual basis of his claim. He explains that "[t]he District Court dispensed with the claim without acknowledging appellants request for an evidentiary hearing" and that "[t]here is evidence that has yet to be discovered." Id. at 22. "A district court's decision to grant or deny an evidentiary hearing in a habeas proceeding is reviewed for an abuse of discretion." Anderson v. Att'y Gen. of Kan., 425 F.3d 853, 858 (10th Cir. 2005).

Pursuant to 28 U.S.C. § 2254(e)(2)(A), "[i]f the [petitioner] has failed to develop

---

[2] When considering Selectman's § 2254 petition, the district court explained that, "[a]s observed aptly by the [CCA], the notes taken by the prosecutor's investigator of his interview with Juror M were already before the trial court." ROA, Vol. 1 at 438. However, we do not read the CCA's decision as finding that the notes themselves were before the trial court. In fact, in its decision, the CCA explained that "[t]he trial court allowed defense counsel to submit the [notes], stating it would decide later whether they should be considered." Id. at 289. Instead, we interpret the CCA's statement that Selectman "has not alleged that any new information would have been presented [if counsel had obtained a more extensive affidavit from Juror M], other than what was already before the trial court in some form," id. at 295, to mean that the affidavits counsel had submitted already documented the information contained in the notes "in some form." Nevertheless, we need not resolve this issue here.

14

the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the petitioner shows "the claim relies . . . on a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." To develop the factual basis of a claim, "the [petitioner], at a minimum, [must] seek an evidentiary hearing in state court in the manner prescribed by state law." Williams, 529 U.S. at 437. If the petitioner has developed a claim, a hearing is appropriate where the allegations, "if true, would entitle the [petitioner] to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Thus, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." Anderson, 425 F.3d at 859.

Selectman requested an evidentiary hearing in his Rule 35(c) motion, State R., Vol. 3 at 550, and the state trial court denied this request, ROA, Vol. 1 at 69. The CCA affirmed this decision and concluded that, "[b]ecause the motion, files, and record clearly establish [Selectman] is not entitled to relief on each of his claims of ineffective assistance of counsel, the trial court properly denied his motion without a hearing." Id. at 298. As previously discussed, we conclude that the CCA's analysis of Selectman's ineffective assistance of counsel claim for the failure to investigate and litigate the new trial motion was reasonable. Thus, because this claim can be resolved on the basis of the state court record, the district court did not err in deciding the § 2254 petition without conducting an evidentiary hearing.

15

V

We grant Selectman IFP status, but we deny his application for a COA and dismiss this matter.

Entered for the Court


Mary Beck Briscoe
Chief Judge