The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 1, 2018

## 2018COA152

## No. 16CA0644, *People v. Bohl* — Criminal Procedure — Trial Jurors; Juries — Jury Misconduct

A division of the court of appeals considers whether it is
reversible error for a judge to deny a defendant access to juror
contact information post-verdict to investigate alleged jury
misconduct.

The division first holds that a trial court's denial of a party's
request for juror contact information is reviewed for an abuse of
discretion.  The division then concludes that because no evidence of
jury misconduct was revealed during the post-trial hearing, the
defendant's request for juror contact information is speculative and
the trial court did not abuse its discretion in declining to release
juror contact information to the defendant.

Accordingly, the division affirms the judgment.

Court of Appeals No. 16CA0644
Adams County District Court No. 14CR3620
Honorable Thomas R. Ensor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joshua Thomas Bohl,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE FOX
Taubman and Terry, JJ., concur

Announced November 1, 2018

Cynthia H. Coffman, Attorney General, Elizabeth Ford Milani, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Joshua Thomas Bohl, appeals the trial court's decision denying him access to juror contact information. We affirm. Because the record lacks evidence of jury misconduct, the trial court did not abuse its discretion in declining to release juror contact information.

## I.    Background

¶ 2    A jury convicted Bohl of one count of first degree murder for killing his girlfriend, Jayme Hosier.

### A.    Bohl's Trial

¶ 3    During a four-day trial, the prosecution presented evidence that Bohl killed Hosier in a Commerce City apartment. Bohl initially told police that Hosier died when a television accidentally fell on her head, but the forensic pathologist determined that Hosier died from asphyxiation due to blunt force trauma to the neck. The key dispute at trial was whether Bohl had the requisite intent to commit first degree murder. The prosecution's pathologist said that pressure to Hosier's neck would have had to continue for three to five minutes before she died, but the defense expert testified that Hosier could have died sooner, helping to negate intent.

### B.    Post-Trial Hearings

1

¶ 4     The day after the verdict, a deputy district attorney who was not involved in prosecuting the case sent a text message to Shelley Hillesheim, the wife of jury foreman Mark Hillesheim.  Mrs. Hillesheim and the deputy district attorney knew each other, and the deputy district attorney asked if Mr. Hillesheim would provide feedback on the trial and the prosecutors' performance during the case.  Mrs. Hillesheim replied as follows:

> The minute Mark got selected to sit on the case, I knew he would be the foreman too.  I told him I was calling it.  He took it very seriously too.  It kind of amused me.  He would come up and look up and research various scientific items that were presented, etc.  He said he even mapped out his own timeline of events so he could try to put it together in his mind.  He said he'd be more than happy to share his feedback.  He took lots of notes and still is frustrated by certain things.

¶ 5     Following this communication, the People filed a "Notice of Juror Contact" with the trial court.  In response, Bohl's counsel quickly filed a motion for a new trial.  In addition to requesting a

2

new trial, Bohl requested alternatively that the court hold a hearing on the incident and release the jurors' contact information.[1]

¶ 6    At a hearing on Bohl's motion, the court directed the People to subpoena the Hillesheims to a January 7, 2016, hearing. The court declined to provide juror contact information to Bohl's counsel at that time, explaining, "I'm not planning on doing that right now. If we need to, we will. But I think right now . . . we need to summon the juror and his wife into court."

¶ 7    At the January 7 hearing, the court informed the Hillesheims that they had been subpoenaed because it appeared that Mr. Hillesheim might have violated the court's order not to engage in outside investigation. The court proceeded to advise the Hillesheims

> that if it's shown by either side that you violated an order of this Court, technically speaking, you could be found in contempt of this Court; and this Court could impose a

---

[1]Bohl does not appeal his conviction, nor the trial court's denial of his motion for a new trial. Rather, Bohl limits his appeal to the issue of whether the trial court abused its discretion in denying him access to juror contact information. We have jurisdiction over his appeal as the court's denial of access to juror contact information was part of the "final judgment" denying Bohl's motion for a new trial. *See People v. Cochran*, 490 P.2d 684, 685 (Colo. 1971).

> sentence up to six months in the Adams
> County Jail or a fine or require that you pay
> restitution if in fact a mistrial is declared.

¶ 8    While the court intimated that it was not focused on pursuing contempt proceedings, it nonetheless advised the Hillesheims that "theoretically, that may occur; and so I think you may need to consult with an attorney to see what liability you may have in this matter before I proceed to a hearing."

¶ 9    At a later hearing, on February 16, 2016, defense counsel renewed her request for contact information for the other jurors. While the court did not completely foreclose that possibility, it expressed concern that CRE 606(b) precluded inquiry into the jury's deliberative process.

¶ 10    On February 16, Mrs. Hillesheim testified that, during trial, her husband had shown her that he was researching decomposition on the internet. Mrs. Hillesheim said the webpage displayed a picture of a pig with the title "decomposition." She testified that it was the only time she saw her husband researching decomposition or any other scientific items during the trial. Mrs. Hillesheim also testified that Mr. Hillesheim had created a timeline of events in the case, but that she had not seen it.

4

¶ 11    Mr. Hillesheim testified that he had "looked up decomposition of animals, which was brought to my interest [by] terms used in the case," but stated that he did not remember what websites he accessed. He said that he was motivated to look up decomposition because "it was all new" and he was interested from a personal standpoint because he was a hunter who grew up on a farm. He said he told his wife he was researching decomposition because "it was dealing with some sciences that are involved this week in the case."

¶ 12    Regarding the timeline, Mr. Hillesheim said he believed he had made some notes before the last day of trial, like "chicken scratch," but he could not recall what he "did with [them, or] if [they were] used for anything[.]" Ultimately, Mr. Hillesheim testified that his research was "nothing specific to anything in the case" and that he did not share the timeline or his decomposition research with the other jurors.

¶ 13    At the conclusion of the hearing, the court did not address Bohl's request for juror contact information, but said that it would not "subpoena the other 11 jurors" because "[w]e should only [subpoena other jurors] if there, in fact, is a good-faith belief that

extraneous information may have been submitted to the jury[.]" The court reasoned that, based on the evidence presented, Bohl failed to show that extraneous evidence of decomposition had been presented to the jury, and even if it had been, there was no prejudice because decomposition was not an issue at trial. The court also found that because the timeline was based on "information that [Mr. Hillesheim] received at trial," the timeline was not extraneous information. Accordingly, the court denied Bohl's motion for a new trial and later sentenced Bohl to life in prison without the possibility of parole.

## II.   Juror Contact Information

¶ 14     Bohl argues that the trial court abused its discretion in denying his request for juror contact information because he was deprived of the opportunity to investigate and gather evidence to support his claim of juror misconduct. We disagree.

### A.   Preservation and Standard of Review

¶ 15     The parties agree that this issue was preserved.

¶ 16     Although there is no established standard of review in Colorado for a trial court's denial of a party's request for juror contact information, we conclude that we should review a court's

denial of access to juror contact information for an abuse of discretion. *Cf. People v. Pifer*, 2014 COA 93, ¶ 19 ("We review [defendant's Crim. P. 24(b)(1)(X) challenge based on bias] for an abuse of discretion[.]"); *People v. Pena-Rodgriguez*, 2012 COA 193, ¶ 69 ("Assuming, while not deciding, that the trial court erred or abused its discretion in applying Crim. P. 24(a)(4) and Crim. P. 33(c), we find any error harmless."), *aff'd*, 2015 CO 3, *rev'd on other grounds*, 580 U.S. ___, 137 S. Ct. 855 (2017); *People v. Garrison*, 2012 COA 132M, ¶ 7 (reviewing the trial court's decision under Crim. P. 24(g) — allowing juror questions — for an abuse of discretion). *See generally King v. United States*, 576 F.2d 432, 438 (2d Cir. 1978) (recognizing that although the trial judge has discretion to disclose juror contact information, "[t]here is a judicial reluctance" to allow post-verdict contact with jurors); *Brewington v. State*, 981 N.E.2d 585, 593-94 (Ind. Ct. App. 2013) (concluding that the trial court correctly balanced the needs of effective trial administration against Brewington's constitutional rights and did not abuse its discretion in granting the State's request for an anonymous jury), *aff'd in part and vacated in part*, 7 N.E.3d 946 (Ind. 2014); *Golnick v. Callender*, 860 N.W.2d 180, 195 (Neb. 2015)

(concluding that the trial court did not abuse its discretion in denying Golnick's request for juror contact information after the jurors completed their service and applying a statutory "good cause" standard to the disclosure of juror information). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law. *People v. Relaford*, 2016 COA 99, ¶ 25.

## B. Law and Analysis

¶ 17 Crim. P. 24(a)(4) says that although "[j]urors shall not be required to disclose personal locating information . . . and such information shall not be maintained in files open to the public[,] [t]he trial judge shall assure that parties and counsel have access to appropriate and necessary locating information." While Crim. P. 24(a)(4) is more often raised in pre-evidentiary proceedings, such as voir dire, Bohl relies on the rule post-trial, arguing that the trial court abused its discretion by failing to provide the requested juror contact information.

¶ 18 The United States Constitution does not guarantee a defendant the right to question jurors post-verdict. *Pena-Rodriguez,* ¶ 68. And though CRE 606(b) limits the circumstances under

8

which a juror may testify post-trial, it provides an exception for "extraneous prejudicial information . . . improperly brought to the jurors' attention." CRE 606(b)(1). Bohl seeks juror contact information to strengthen his motion for a new trial based on jury misconduct via exposure to "extraneous prejudicial information." Invoking Crim. P. 24(a)(4), Bohl argues that access to juror contact information is "appropriate and necessary" because the defense cannot otherwise contact the jurors to investigate potential jury misconduct. We disagree.

¶ 19 Following Bohl's motion for a new trial, in which he requested juror contact information, the trial court properly held a hearing to determine the extent of any potential jury misconduct. *See Wiser v. People*, 732 P.2d 1139, 1143 (Colo. 1987) ("In most cases involving juror misconduct, the trial court should hold a hearing before deciding whether there is a reasonable possibility that the misconduct affected the jury's verdict."). At the hearing, Mr. Hillesheim and his wife testified that Mr. Hillesheim's out-of-court research was limited to research on decomposition, and Mr. Hillesheim denied sharing his out-of-court research with other jurors. Mr. Hillesheim also explained that the timeline he created

was based on testimony and evidence presented at trial, and, thus, he did not rely upon out-of-court research in creating the timeline.

¶ 20 At trial, the parties agreed that the victim's body was decomposed when the prosecution's pathologist performed the autopsy. The key issue was how long the victim had endured blunt force trauma to the neck before she died, as the timing was used to argue whether Bohl had the requisite intent for first degree murder. Because decomposition was not an issue at trial, the trial court found that Mr. Hillesheim's research did not prejudice Bohl. Further, because Mr. Hillesheim testified that he did not present out-of-court research to other jurors, the court properly concluded that no extraneous information could have influenced the verdict. *See id.* at 1142 (stating that courts apply an objective test to determine if there is a "reasonable possibility" that extraneous information affected the verdict before concluding that a new trial is required); *People v. Holt*, 266 P.3d 442, 444 (Colo. App. 2011) (holding that the disclosure of extraneous information only requires a new trial if the information was "improperly before the jury" and it "posed the reasonable possibility of prejudice to the defendant" (quoting *Kendrick v. Pippin*, 252 P.3d 1052, 1063 (Colo. 2011))); *see*

*also United States v. Davila,* 704 F.2d 749, 754-55 (5th Cir. 1983) (concluding that where the defendants failed to make any preliminary showing of misconduct in the jury's deliberations in hopes of uncovering an impropriety, the trial judge acted properly in denying the defendants' motion to interview jurors post-verdict).

¶ 21 We perceive no abuse of discretion in the trial court's refusal to subpoena the other jurors or to furnish their contact information to the defense. Bohl argues that without the juror contact information, the trial court precluded the defense from investigating the truthfulness of Mr. Hillesheim's claim that he did not present outside research to other jurors. Bohl contends the Hillesheims' testimony was inconsistent with Mrs. Hillesheim's text message, as Mrs. Hillesheim's message referenced Mr. Hillesheim's research on "various scientific items," and his research violated a court order not to conduct outside research. Accordingly, Bohl reasons that additional investigation is necessary to determine if there was jury misconduct.

¶ 22 But the trial court found the Hillesheims' testimony persuasive, a determination we may not second-guess. *See People v. Harlan,* 109 P.3d 616, 627-28 (Colo. 2005) (noting that the trial

11

court, in finding whether jurors relied upon extraneous prejudicial information, "had to engage in difficult credibility determinations" and stating on appeal, "we cannot second-guess determinations of the trial court regarding witness credibility"). Because we defer to a trial court's factual and credibility determinations when supported by the record, and given the speculative record evidence of jury misconduct, we perceive no abuse of discretion in denying Bohl access to juror contact information.

¶ 23 Bohl also argues that he needed to interview other jurors before determining the truthfulness of the Hillesheims' testimony because their testimony was guarded given their fear of being held in contempt of a court order. But this is mere speculation. To follow Bohl's argument, we would need to conclude that the Hillesheims were lying about the extent of Mr. Hillesheim's out-of-court research and that Mr. Hillesheim also lied about not sharing out-of-court research with other jurors. Because we defer to the trial court's credibility determinations and Bohl has not alleged specific extraneous prejudicial information to which the jury may have been exposed, we cannot conclude that Bohl was entitled to obtain juror contact information to further investigate jury

12

misconduct. *See Stewart v. Rice*, 47 P.3d 316, 322 (Colo. 2002) (recognizing that one of the "fundamental" purposes of CRE 606(b) is to "protect jurors from harassment and coercion"); *see also United States v. Riley*, 544 F.2d 237, 242 (5th Cir. 1976) ("Historically, interrogations of jurors have not been favored by federal courts except where there is some *showing* of illegal or prejudicial intrusion into the jury process.") (emphasis added).

¶ 24   Bohl's reliance on *Harlan* and *Pena-Rodriguez*, in arguing that we should compel the trial court to provide Bohl with the contact information to facilitate his investigation, is misplaced. In *Pena-Rodriguez*, ¶ 6, after entry of the verdict, two jurors contacted defense counsel to disclose racial animus present during jury deliberations. The defense did not need to request juror contact information because two jurors voluntarily disclosed another juror's racial animus. And because there was direct evidence of jury misconduct, the defense's questioning of other jurors was warranted and did not constitute a "fishing expedition." *Id.* at ¶ 68 (quoting *Journal Publ'g Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986)).

¶ 25     In *Harlan,* defense counsel learned of jury misconduct after the jury's death penalty verdict when defense counsel's investigator contacted jurors months later to interview them, and the defense learned that some jurors had used the Bible to determine whether the death penalty was justified for murder.  109 P.3d at 622.  It is not clear how defense counsel had obtained the jurors' contact information, but defense counsel presented direct evidence of jury misconduct via the use of extraneous prejudicial information, similar to the evidence of jury misconduct in *Pena-Rodriguez.*

¶ 26     In this case, in contrast, an investigation has already been conducted and no evidence of jury misconduct was revealed. Following the People's proper disclosure of the text message and Bohl's motion for a new trial, Bohl had the opportunity to question the jury foreman and his wife.  However, the trial court determined from the Hillesheims' testimony that no jury misconduct had occurred, as no extraneous prejudicial information had been presented to other jurors.  And any extraneous information that Mr. Hillesheim obtained was not relevant to a key issue at trial.  *See Wiser,* 732 P.2d at 1143.  Further, no other jurors reported jury misconduct to defense counsel or the judge.  *People v. Wadle,* 97

P.3d 932, 934 (Colo. 2004) ("[T]wo jurors contacted the court and . . . expressed their concern that their review of the [i]nternet definition [of a drug relevant to the case] violated the court's instructions."); *Wiser*, 732 P.2d at 1140 (defense counsel learned of jury misconduct from an "informal meeting in the judge's chambers with the members of the jury after the jury returned its verdicts"). Accordingly, given the lack of record evidence to support prejudice from jury misconduct, we defer to the trial court's decision not to furnish juror contact information.

¶ 27 Given (1) that the trial court conducted a hearing on the jury's potential exposure to extraneous prejudicial information; (2) the speculative nature of Bohl's request for juror contact information; and (3) CRE 606(b)'s fundamental purpose of protecting jurors and their deliberations, the trial court's decision not to release juror contact information to the defense was not manifestly unreasonable, arbitrary, or unfair, and it did not misapply or misinterpret the law. *See Relaford*, ¶ 25; *Wiser*, 732 P.2d at 1142 (holding that the use of the objective test to determine whether extraneous information affected a verdict "is consistent with CRE

606(b)'s purpose of protecting the privacy of jurors"). Accordingly, we discern no abuse of discretion by the trial court.

## III.   Conclusion

¶ 28    The order is affirmed.

JUDGE TAUBMAN and JUDGE TERRY concur.